Sharon and Myron **CHRISTOPHERSON**, Appellants,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 284, Respondent,**

**Medicine Lake Bus Company and Bernard Lyon Doherty, Respondents.**

No. C6–84–349.

Court of Appeals of Minnesota.

Sept. 18, 1984.

Jan Stuurmans, Stuurmans & Karan, P.A., Minneapolis, for appellants.

John F. Angell, Lasley, Gaughan, Stich & Angell, P.A., Minneapolis, for Independent School Dist. No. 284, respondent.

James A. O'Neal, Faegre & Benson, Minneapolis, for Medicine Lake Bus Co. and Bernard Lyon Doherty, respondents.

Heard, considered and decided by POPO-VICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellants appeal the trial court's order refusing to grant a new trial, claiming the trial court erred (1) by refusing to permit counsel to comment to the jury upon the effect of their answers to questions concerning percentage of comparative fault, (2) the jury's findings were contrary to the weight of evidence, (3) by aggregating appellant Sharon Christopherson's portion of comparative fault. We reverse and remand.

## FACTS

On June 7, 1978, Sharon Christopherson, then fifteen years old, was injured while walking between two parked school buses enroute to her bus. The buses were parked end-to-end in a horseshoe shaped drive at Wayzata Junior High School. Sharon walked between parked school buses every day and had never been told not to walk between parked buses. The school principal, John A. Wright, admitted the school district knew children walked between buses and had never instructed students not to walk between buses.

Medicine Lake Bus Company had a rule requiring parked buses to be out of gear and in neutral with the emergency brake on when the engine was running. Respondent Bernard Doherty was the driver of the bus that injured Sharon. Doherty was parked with the bus engine running, its transmission in gear, his foot depressing the clutch, and the emergency brake not set. As Sharon walked in front of the bus, Doherty's foot slipped off the clutch causing the bus to lurch forward pinning Sharon between two buses.

Sharon received serious injuries and was taken to a nearby hospital. Her leg was punctured and her thigh muscles injured. Sharon was able to go home the same day but stayed in bed for a week before beginning to walk on crutches. Sharon was treated by Dr. O'Phelan on June 23, 1978. He diagnosed inflammation of the quadraceps muscle and indicated the injury would heal itself if proper care was taken. Dr. O'Phelan put a splint on Sharon's leg and instructed her twice that bending the knee could cause a more serious muscle rupture.

Despite these warnings and without asking Dr. O'Phelan, Sharon began teaching gymnastics the last week of June 1983. On July 14, 1983, she was demonstrating an exercise on the uneven parallel bars and, as she dismounted, felt her tendons tear when she landed. Dr. O'Phelan determined Sharon had ruptured her quadraceps and required surgery. Sharon suffered a 15 to 20 percent permanent loss of function in her left leg as a result of her injuries. Reconstructive plastic surgery was performed three times on Sharon's leg to repair the scar from the puncture wound.

A jury trial was held October 17–21, 1983. Sharon sued for damages and her father, Myron Christopherson, sued for de-

rivative damages. The trial judge refused appellants' request for a special verdict form allocating any fault attributable to Sharon to either June 7 or July 14, 1983. The trial court held Sharon's portion of fault could not be divided.

The trial court also ordered the attorneys not to argue the effect of the comparative fault statutes. The jury returned a special verdict finding Sharon 50 percent negligent, Medicine Lake and its agent 40 percent negligent, and the school district 10 percent negligent. Accordingly, judgment was entered denying any recovery for appellants. Appellants' motion for a new trial was denied and this appeal followed.

## ISSUES

1. Did the trial court err by forbidding counsel to comment upon the effect of the jury's answers to the percentage of negligence question?

2. Was the jury's verdict contrary to the weight of the evidence?

3. Should Sharon's portion of comparative fault have been allocated to her actions on June 7 and July 14, 1983?

## ANALYSIS

1. Minnesota Rule of Civil Procedure 49.01(2) provides:

In actions involving Minn.Stat.1971, Sec. 604.01, the court shall inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law, or complex issues of law or fact are involved, which may render such instruction or comment erroneous, misleading or confusing to the jury.

*Id.* The trial court forbade counsel to comment upon the effect of the jury's answer to the percentage of negligence questions. The record does not disclose anything indicating the trial judge believed doubtful or

unresolved issues of law or complex facts were involved in this case.

The purpose of Rule 49.01(2) was described by the Minnesota Supreme Court Advisory Committee:

[T]he Advisory Committee is specifically recognizing the unique status of the special verdict form in actions involving the comparative negligence statute, Minn. Stat.1971, Sec. 604.01. The comparative negligence law specifically requires that the percentage of fault issue be submitted to the jury in the form of a special verdict. The trial judge in such cases has no discretion regarding verdict forms. He is not free, as he is in almost all other types of cases, to choose the verdict form that he deems to be most desirable for the case and fact situation involved. * * * In order to remedy this situation, the Advisory Committee believes it is best to create a special rule within the special verdict rule for comparative negligence cases. We have done so in proposed Rule 49.01(2). Under Rule 49.01(2) the predominant verdict form will require the trial judge to inform the jury of the effect of its answer to the percentage of fault (comparative negligence) question and to permit full comment by counsel on that matter. In the unusual situation where issues are presented of such complexity or uncertainty regarding law or fact that is difficult for the judge to instruct on the effect of the answers, the rule permits the trial judge to adopt the pure special verdict form. The trial judge's discretion in determining when the exceptional situation exists will, of course, be a reviewable matter. * * * [T]he Advisory Committee anticipates that the trial judge will inform the jury generally of the effect of its answer to the percentage of negligence question. Counsel will be free in his comment to discuss possible effects of various possible answers, including the use of examples.

4 J. Hetland & O. Adamson, *Minnesota Practice*, Minnesota Jury Instruction Guides 129–30 (1974).

Counsel should have been permitted to comment upon the effect of the jury's answers to the percentage of fault question. The trial court's instruction that contributory fault would not bar appellants from recovery "if the contributory fault was not greater than the fault of the person against whom recovery is sought" was inadequate. Without further explanation, the jury could easily have believed their verdict allowed appellants to recover half of their damages. Even the trial court at the post-trial motion hearing agreed the verdict was an "anomaly", stating further:

> I think that everyone has believed all along that it was appropriate for Ms. Christopherson to recover something for the injuries which she sustained at the hands of the two buses.

We believe appellants' case was substantially prejudiced by the trial court's refusal to follow Minn.R.Civ.P. 49.01(2). Accordingly, we reverse and remand the matter to the trial court.

2. Our resolution of the previous issue makes discussion of the remaining issues unnecessary. We do note, however, that while an injured party's fault in not avoiding injury may prevent recovery for that injury, it should not act to prevent recovery for an earlier injury. While the law provides the claimant with a remedy whether he seeks to avoid injurious consequences or not, the amount of damages recoverable is limited to the extent that he acted reasonably to prevent his own loss. *Bemidji Sales Barn, Inc. v. Chatfield,* 312 Minn. 11, 19, 250 N.W.2d 185, 189 (1977); Minn.Stat. § 604.01, subd. 1 (1982).

## DECISION

The trial court's order forbidding counsel to comment upon the effect of the jury's answers to the percentage of negligence question violated Minnesota Rule of Civil Procedure 49.01(2) and substantially prejudiced appellants.

Reversed and remanded.