Thomas BARDSLEY, Appellant,

v.

IPEC, INC., Defendant,

Miehle-Goss-Dexter, Inc., Respondent,

and

UNION ADVOCATE, Defendant and
Third Party Plaintiff,

v.

JOHN CHARLES PRINTING, INC.,
Third Party Defendant.

No. C1–85–1192.

Court of Appeals of Minnesota.

Feb. 18, 1986.

Susan Bedor, William H. Crowder, Reinhardt & Anderson, St. Paul, for appellant.

John H. Hinderaker, Mary H. Terzino, Faegre & Benson, Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

This personal injury action arose out of an accident which occurred when appellant Thomas Bardsley was working with a printing press manufactured by respondent Miehle-Goss-Dexter (MGD). Bardsley has appealed from the trial court's denial of his alternative motions for judgment notwithstanding the verdict or a new trial, claiming that the trial court erroneously failed to allow his counsel to comment on the apportionment of fault during closing argument, and that the evidence does not support the jury's apportionment of fault. We affirm.

## FACTS

On February 12, 1980, while working for John Charles Printing, Inc., Thomas Bardsley was injured when his fingers were caught by a printing press folder and pulled into the machine.

The folder involved was part of a Goss Suburban Press manufactured by respondent Miehle-Goss-Dexter. The press and folder were initially sold to the St. Petersburg Times, which used the press until 1975, and then sold it to IPEC, Inc., a broker, who transferred the press to a newspaper known as the Union Advocate. In 1979 the Union Advocate sold the press and folder to John Charles, a former Union Advocate employee. Bardsley began working for John Charles Printing that same year.

At the time of the accident, the press was being used to make advertising inserts. A continuous sheet of printed newspaper (the "web") passed through the folder, and two rotating cylinders cut the web at certain designated intervals. Bardsley's job was to stack the completed inserts in piles. He would also occasionally feed the web into the folder when it would fall out. The accident occurred when Bardsley was

feeding the web into the folder. His fingers were caught by the cutting edge of the cylinder and pulled between the two cylinders.

The parties dispute whether the folder in question was equipped with a guide/guard. The guide/guard is a safety device which fits over the point between the two cutting cylinders, protecting an operator from inadvertently coming into contact with the rotating cylinders. The guide/guard also makes it easier for an operator to guide the web into the folder. MGD claims the folder was manufactured with a guide/guard, and that it was subsequently removed by one of its owners. Bardsley claims there was never a guide/guard on the machine. It is undisputed that Bardsley's accident would have never occurred if the guide/guard had been on the machine.

Bardsley sued MGD, IPEC and the Union Advocate, and John Charles Printing was made a third party defendant. Shortly before trial, Bardsley executed Pierringer releases, discharging IPEC, the Union Advocate and John Charles Printing, and proceeded to trial only against MGD. At the commencement of the trial, Bardsley's theory was that MGD should have designed the guide/guard with an interlocking system and that MGD failed to design proper warnings for the machine; however, during trial Bardsley amended his theory, claiming that the folder had never been equipped with a guide/guard.

After all of the testimony had been received, the trial court issued the following instructions regarding comparative fault:

If two or more parties acted wrongfully and if their wrongful conduct directly caused the injuries in question, you are required to compare their fault. You do this by assigning to each of such parties the percentage of fault that has been proved by the greater weight of the evidence. When you add all the percentages they must total 100 percent.

Under the law a plaintiff can recover against a particular defendant only if the percentage of the plaintiff's fault is equal to or less than that particular defendant's percentage of fault.

Bardsley's counsel in closing argument attempted to comment on those instructions as follows:

[BARDSLEY'S COUNSEL]: Now, the sixth topic I want to talk to you about is comparative fault * * *

Let me run through some examples. If you find, for example, Goss is 100 percent at fault and Tom Bardsley is zero percent at fault, then Tom Bardsley recovers all his damages. O.K. That's a start-off point on that line, whatever line it is, where you say how much—question 14—[the damage question] how much were his damages.

Now, if, for example, you were to find Goss 90 percent at fault,—

[MGD'S COUNSEL]: Excuse me. Your Honor, I object to this as improper argument.

THE COURT: Sustained.

* * * * * *

The jury found Bardsley 10 percent negligent and MGD 10 percent negligent. The remaining 80 percent was allocated to the Pierringered defendants. The jury assessed damages of $400,000, which resulted in a judgment in favor of Bardsley and against MGD in the amount of $40,000.

## ISSUES

1. Did the trial court improperly deny Bardsley's counsel the opportunity to comment further on the comparative fault instruction?

2. Did the trial court erroneously determine that Bardsley was not entitled to either a new trial or a judgment notwithstanding the verdict on the grounds of insufficient evidence?

## ANALYSIS

■ 1. The general rule is that neither the court nor counsel may inform a jury of the legal effect of its answers to a special verdict. Minn.R.Civ.P. 49.01(1). The exception to this rule involves actions where comparative fault is at issue:

(2) In actions involving Minn.Stat.1971, Sec. 604.01 [the comparative fault statute], the court shall inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law, or complex issues of law or fact are involved, which may render such instruction or comment erroneous, misleading or confusing to the jury.

Minn.R.Civ.P. 49.01(2). Further insight into this rule is provided by the Minnesota Supreme Court's Advisory Committee comments:

The comparative negligence law specifically requires that the percentage of fault issue be submitted to the jury in the form of a special verdict. The trial court in such cases has no discretion regarding verdict forms. * * * In order to remedy this situation, the Advisory Committee believes it is best to create a special rule within the special verdict rule for comparative negligence cases. We have done so in proposed Rule 49.-01(2). Under Rule 49.01(2) the predominant verdict form will require the trial judge to inform the jury of the effect of its answer to the percentage of fault (comparative negligence) question and to permit full comment by counsel on that matter. In the unusual situation where issues are presented of such complexity or uncertainty regarding law or fact that is difficult for the judge to instruct on the effect of the answers, the rule permits the trial judge to adopt the pure special verdict form. The trial judge's discretion in determining when the exceptional situation exists will, of course, be a reviewable matter. * * * In instructing under Rule 49.01(2) the Advisory Committee contemplates that the trial judge will not undertake to provide a detailed explanation of the possible effects of all possible answers to the percentage of negligence question. Rather, the Advisory Committee anticipates that the trial judge will inform the jury generally of the effect of its answer to the percentage

of negligence question. Counsel will be free in his comment to discuss possible effects of various possible answers, including the use of examples. The use of examples by the trial judge related to the facts in the pending case should be discouraged.

4 J. Hetland & O. Adamson, *Minnesota Practice*, Minnesota Jury Instruction Guides 129–30 (1974).

Bardsley claims that the above language clearly authorizes the argument which he was denied. He cites, as further support for this claim, *Yates v. Hanna Mining Co., Inc.*, 365 N.W.2d 783 (Minn.Ct.App.1985), where the trial court had disallowed any comment by counsel other than a paraphrase of the comparative fault instruction. This court reversed, stating:

Yates sought to explain the meaning of comparative fault to the jury through the use of hypothetical examples in final argument. This is an acceptable practice. * * * The trial court denied Yates proper final argument. That denial deprived Yates of an opportunity to comment meaningfully on the court's comparative fault instruction. That was reversible error.

*Id.* at 786. Bardsley also cites *Christopherson v. Independent School District No. 284*, 354 N.W.2d 845 (Minn.Ct.App. 1984), where again the trial court had refused to allow any comment by counsel whatsoever. This court in *Christopherson* stated:

Counsel should have been permitted to comment upon the effect of the jury's answers to the percentage of fault question. The trial court's instruction that contributory fault would not bar appellants from recovery "if the contributory fault was not greater than the fault of the person against whom recovery is sought" was inadequate. Without further explanation, the jury could easily have believed their verdict [of 50 percent fault to the plaintiff, 40 percent to one defendant and 10 percent to another de-

fendant] allowed appellants to recover half of their damages.

*Id.* at 848.

■ *Yates* and *Christopherson* are distinguishable from the present situation, however, since in both of those cases the plaintiff was able to demonstrate prejudice as a result of the trial court's ruling. In the present case, on the other hand, no prejudice has been demonstrated. First, although Bardsley's attorney was denied his first attempt at explaining the trial court's instruction, he was allowed to provide a different explanation:

Let me go to a part of the judge's instructions then. I'll discuss it that way.

The instructions say, "Under the law a plaintiff can recover against a particular defendant only if the percentage of plaintiff's fault is equal to or less than that of the defendant's percentage of fault."

What does that mean? That means that the plaintiff can recover against Goss only if the plaintiff's fault, the percentage that you put in there, is the same or less than what you give to Goss. That's what that means.

Because Bardsley's attorney was thus allowed to further explain the application of the comparative fault statutes to Bardsley's claim against MGD, Bardsley's attorney was allowed more than a mere "paraphrase" of the judge's instructions, which was found insufficient in *Yates*. Also, due to the above explanation allowed Bardsley's attorney, the same possibility for jury confusion that was present in *Christopherson* was not also present here.

Further, while prejudice was demonstrated in both *Yates* and *Christopherson* by the fact that the jury in each case had returned a verdict precluding any recovery by the plaintiff, here the jury apportioned negligence to Bardsley in the amount of 10 percent and to MGD in the amount of 10 percent, allowing Bardsley to recover. This demonstrates that the jury understood Bardsley could recover against MGD if both parties' apportionment of fault was the same.

Bardsley alleges that prejudice was demonstrated by the fact that the jury asked the court whether the damages question was intended to "cover all parties," thereby indicating confusion. However, as Bardsley admits, the court re-explained the process to be followed in answering the damages question, and the jury indicated that they understood. Indeed, Bardsley actually alleges only that "this sort of confusion shows *potential* for injustice in the legal system" (emphasis supplied). Prejudice in this particular instance has not been demonstrated.

Our review of this matter has been particularly difficult because it is unclear exactly what Bardsley's attorney intended to tell the jury. Following MGD's objection, Bardsley's attorney did not approach the bench to explain what he was attempting to say but, rather, dropped his argument immediately. During his post-trial motion he argued only that he had intended to use a series of hypotheticals to explain the effect of different percentages of fault on MGD's potential liability.

If Bardsley's attorney had simply intended to explain more clearly by the use of his hypotheticals that Bardsley could recover against MGD only if Bardsley's fault was equal to or less than the fault of MGD, any prejudice due to the denial of his use of the hypotheticals was cured by his subsequent explanation to the jury. On the other hand, if Bardsley's counsel had intended to explain by his hypotheticals the effects of any apportionment of fault to the Pierringered defendants, the hypotheticals were properly disallowed. *See Yates*, 365 N.W.2d at 786–87 (defendant remaining in a workers compensation lawsuit would be "unduly prejudiced if plaintiff were allowed to inform the jury that recovery from [the defendant employer] was impossible"). In either case, therefore, denial of the use of hypothetical examples did not constitute prejudicial error.

2. Bardsley also bases his appeal upon a claim of insufficient evidence to support the verdict apportioning only 10 percent of the fault to MGD. Bardsley claims that

the testimony of one witness, Phillip Krotz, establishes conclusively that the folder in question was never equipped with a guide/guard, and that therefore MGD should have been found more than 10 percent negligent.

The trial court dismissed this claim, stating:

> The record does, however, contain certain testimony of witnesses who claim to have seen the guard in place at various times after the machine left [MGD's] control.
>
> Considering this conflict in the evidence the matter was appropriate for jury resolution. Except in cases in which certain testimony is patently incredible or unreliable, credibility is a jury issue. This is a case in which credibility clearly was a jury issue.

■ There is evidence in the record to support this decision. The parts list in the engineering file containing the complete engineering records for the press reflected that the guide/guard was furnished on the press when it was sold to the St. Petersburg Times. John Lee Irvin, who worked at the St. Petersburg Times as a staff engineer, testified by deposition that due to the company's safety practices, the guide/guard would have been absolutely mandatory "or there would have been real hell raised." Leonard Tafel, who worked for IPEC, testified by deposition that in 1975 the paper guide was "as it was designed * * * on an adjustable bolt so that you can change the angle a little." He stated also that at the time he tendered the folder to Union Advocate the guide was on the folder and properly assembled. Edward Krauss, who also worked for IPEC, also testified that the guide/guard was on the folder when it was installed at the Union Advocate. Gilbert Dunn, who worked for the Union Advocate, testified that when the folder was purchased from IPEC, it was equipped with a paper guide, and that he "had to keep heading to the employees and telling them to get it *back on* there." (Emphasis supplied.)

The standard for determining whether a motion for judgment notwithstanding the verdict should be granted is whether there is any competent evidence which reasonably tends to support the verdict. *Newmaster v. Mahmood,* 361 N.W.2d 130, 133 (Minn.Ct.App.1985). The trial court should view the evidence in the light most favorable to the verdict, *id.,* and should grant the judgment notwithstanding the verdict only where the facts are undisputed and reasonable minds could draw but one conclusion from those facts. *Id.*

■ A denial of a motion for a new trial should not be disturbed where different persons might reasonably draw different conclusions from the evidence. *Carlson v. Chicago Great Western Railroad Co.,* 114 Minn. 382, 386, 131 N.W. 375, 376–77 (1911). In view of the conflicting evidence here, denial of Bardsley's motion for judgment notwithstanding the verdict or a new trial was proper, since "[t]he jury is uniquely qualified to apportion negligence." *Yates,* 365 N.W.2d at 787.

## DECISION

Denial of appellant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was proper where the evidence was conflicting and where appellant did not demonstrate prejudice as a result of the trial court's ruling during closing argument.

Affirmed.