Laurie **HASSLER**, Respondent,

v.

**Joe SIMON, individually and d/b/a J.S. Rodeo Co., Defendant (C4–90–1587), Appellant (CX–90–2260),**

**Michael Halloran, Defendant (CX–90–2260), Appellant (C4–90–1587).**

Nos. C4–90–1587, CX–90–2260.

Court of Appeals of Minnesota.

March 5, 1991.

George F. Restovich, Patterson–Restovich–Lund, Rochester, for Laurie Hassler, respondent.

Kenneth R. Hall, Annette M. Margarit, and Terence P. Durkin, Severson, Wilcox & Sheldon, P.A., Apple Valley, for Joe Simon, defendant-appellant.

James R. Carlson, Muir, Heuel, Carlson & Spelhaug, P.A., Rochester, for Michael Halloran, defendant-appellant.

Considered and decided by NORTON, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

NORTON, Judge.

This is a consolidated appeal from an order denying appellant Halloran's and appellant Simon's motions for JNOV or new trial. We reverse and remand for a new trial on the issue of liability only.

## FACTS

Laurie Hassler was injured when she was bowled over by a Black Angus cow. Hassler had competed in a "Wild Cow Milking Contest" (Contest) that occurred during a rodeo promoted by Michael Halloran to raise funds for a Rochester charity. Halloran had promoted and participated in many rodeos before the one on August 15, 1985 when Hassler was injured. Halloran contracted with Joe Simon, doing business as J.S. Rodeo Co., to provide the livestock and labor for the rodeo. The Contest was considered a specialty act and Simon was not to provide the act or livestock for that event.

Halloran got the idea for the Contest by observing several other "Wild Cow Milking Contests" at rodeos in other parts of the country, but this was the first time he had tried the event. The idea of the contest was to recruit local celebrities, such as business owners and media persons, to participate, with three members to each milking team. After chasing, stopping, and milking the cow, the first team to get some milk in their cup and report to the announcer's table would win.

Hassler worked for a local radio station and her boss told her she would participate in the contest as a promotional event for the station. Although she protested because she had worked several week-ends and did not want to work another Sunday, she was there for the contest. She was not informed of any of the details of the Contest before she arrived at the rodeo other than that it was a "Wild Cow Milking Contest" and that two of her co-workers would be there. She was assistant farm director at the station and was knowledgeable about farming and farm animals. She was not afraid or concerned about the safety of the contest.

It had rained for several days before the rodeo, about three inches in three days. As was his usual practice, Halloran plowed the arena just before the rodeo. The purpose of plowing the arena is to give the contestants and animals better footing; a softer, looser surface rather than hard-packed soil. The result of the plowing followed by rain, though, was several inches of deep mud.

Hassler was the team member issued the cup and designated to milk the cow. When she went down to the arena just before the start of the contest, she learned that the cow she would be milking was a Black Angus rather than a dairy cow, but this did not worry her. Halloran did not want dairy cows because they would be too docile. He decided to use Black Angus because a friend of his offered their use for

free and they would be active and have to be chased around.

There were six teams and six cows in the Contest. All the gates were opened and the cows released for the Contest at the same time. Hassler's team member who was holding the rope tied around their cow's neck attempted to hold on and stop the cow, but he slipped and fell in the mud and let go of the rope. Then their team attempted to chase, but were not able to catch, their cow. Hassler never got a chance to try to milk their cow because another team was declared the winner and the Contest ended. It had lasted about fifteen minutes.

After the Contest, Hassler and her teammates started walking across the arena toward an open gate. Several other teams were headed in that direction and someone was waving them toward the gate. The cows had stopped running around and a man on horseback was attempting to round up the cows and lead them to a chute. He had them in a pack and was leading them around the perimeter of the arena while the participants were exiting and walking toward the gate. Suddenly, one of the cows bolted away from the group and ran over Hassler.

She saw the cow coming about twenty-five feet away but the mud was up to her upper calf on her leg and she was unable to move. The cow's head hit her in the chest and knocked her down, fracturing several of her ribs. Then the cow trampled her arm. Her arm was not broken, but the muscle was badly damaged. She required four surgeries, several days of hospitalization, and months of physical therapy.

After trial, the jury returned a special verdict finding all parties causally negligent and apportioned 20% of the fault to Hassler, 40% of the fault to Halloran and 40% of the fault to Simon. The jury found that Halloran and Simon were engaged in a joint enterprise.

## ISSUE

Did the trial court violate Minn.R.Civ.P. 49.01 by commenting on the ultimate effect of a special verdict answer?

## ANALYSIS

■ The scope of review for this appeal is from the court's order denying appellants' motions for a new trial, and issues are limited to those errors alleged in the motion for new trial. *Tews v. Husqvarna, Inc.*, 390 N.W.2d 363, 366 (Minn.App.1986), *pet. for rev. denied* (Minn. Sept. 24, 1986). The standard of review of an order denying a new trial is abuse of discretion. *City of Ogema v. Bevins*, 341 N.W.2d 298, 299 (Minn.App.1983).

The following exchange took place during jury deliberations:

THE COURT: I have a sheet of paper here that's been handed to me by the clerk-bailiff. It reads: If no parties are found negligent, as a direct cause, then the plaintiff will not recover from any source. True or false? Or should we even take this into account?

Is that the question?

FOREPERSON: Yes.

THE COURT: Who is the foreperson? Okay. "If no parties are found negligent, as a direct cause, then the plaintiff will not recover from any source." That is correct. That is correct.

The second question, I think that's up for you to decide.

Halloran objected to the court's response at the time it was made. However, the court let its answer stand and did not give any curative instruction.

Minnesota Rule of Civil Procedure 49.-01(a) says:

Except as provided in Rule 49.01(b), neither the court nor counsel shall inform the jury of the effect of its answers [to the special verdict questions] on the outcome of the case.

The exception at (b) allows:

In actions involving Minn.Stat. c. 604 [the comparative fault statute] the court shall inform the jury of the effect of its answers to the comparative fault question.

■ Appellants alleged that the court violated rule 49.01(a) by commenting on the effect of the jury's answers to the special

verdict questions. In its order denying appellants' motions for a new trial, the court said that its response did not fall under the exception at (b) but nevertheless was harmless error that did not require a new trial. We agree that the court's response is not covered by 49.01(b) because that exception is limited to explaining the effect of the comparative fault question only; that is, explaining the effect of apportioning fault on plaintiff's ability to recover.

> One purpose of the special verdict is to permit the jury to make findings of ultimate facts, free from bias, prejudice, and sympathy and without regard to the effect of their answers upon the ultimate outcome of the case.

*McCourtie v. United States Steel Corp.,* 253 Minn. 501, 516, 93 N.W.2d 552, 562 (1958). In *McCourtie,* a court's explanation of the conditions under which a plaintiff could maintain a cause of action was held to be equivalent to telling the jury the conditions under which the plaintiff could recover. *Id.* Further, this comment on the ultimate outcome of the case was held to be prejudicial error. *Id.* at 518, 93 N.W.2d at 563.

Here, the court's response is a comment on the ultimate effect of the jury's answers to the negligence question. The court told the jury that respondent could not recover, from the parties or any source, unless they found negligence. This went beyond an explanation of the effect of apportioning fault, but instead implied that the jury must find the appellants negligent if respondent was to recover anything for her damages. This response appears to have injected prejudice and sympathy into the jury's deliberations and defeated the purpose of the special verdict form. Further, the response contradicted the court's initial instructions that answers to the negligence and cause questions should not affect the jurors' answers to the damages questions.

■ However,

> No error * * * is ground for granting a new trial * * * unless refusal to take such action appears to the court inconsistent with substantial justice.

Minn.R.Civ.P. 61. A trial court's comment on the ultimate effect of a jury's special verdict answers is harmless error if the evidence overwhelmingly supports the jury's answers. *Richfield Bank and Trust Co. v. Sjogren,* 309 Minn. 362, 369–70, 244 N.W.2d 648, 652 (1976). Here the evidence was not overwhelming.

Regarding Halloran's negligence, the jury heard evidence that Halloran was in charge of the Contest and made the decision when to have it and how to run it. They heard evidence that he chose Black Angus cows because he did not want docile cows but more excitable cows. This is some evidence of negligence and cause but is not overwhelming. Further, appellant Simon's negligence was contingent on Halloran's negligence because the jury found they were engaged in a joint enterprise.

Because the evidence of negligence and cause was not overwhelming, the court's response to the jury question requires reversal and a new trial on the issue of liability.

■ Alternatively, both Halloran and Simon argued that they were entitled to a JNOV or a new trial because the evidence did not support the verdict. JNOV may be granted:

> [W]hen the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome.

*Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983) (citations omitted). A lesser standard is applied when reviewing the sufficiency of the evidence under a motion for new trial.

> A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment.

*Id.* at 855–56 (citation omitted). Although the evidence was not so overwhelming to negate the prejudicial effect of the judge's comment to the jury, the evidence was sufficient to support the trial judge's denial of a JNOV or a new trial based on sufficiency of evidence.

**438**

Appellants also allege that the court erred by failing to rule as a matter of law that respondent's claim was barred by the doctrine of primary assumption of the risk and that they were entitled to JNOV on that basis. Appellants argue, in the alternative, that they were entitled to a jury instruction on primary assumption of the risk.

> Primary assumption of risk * * * relates to * * * whether a defendant was negligent at all—that is, whether the defendant had any duty to protect the plaintiff from a risk of harm.

*Rieger v. Zackoski*, 321 N.W.2d 16, 23 (Minn.1982) (citation omitted). "Generally, the existence of a legal duty is an issue for the court to determine as a matter of law." *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985) (citation omitted). Here, the trial court correctly concluded that Halloran, as promoter of the Contest, owed a duty to the participants. Therefore, the court correctly denied appellants' motions for JNOV on this basis and correctly refused to give an instruction on primary assumption of the risk.

Finally, appellants argue that they were not liable because they did not know of the dangerous propensity of the bolting Black Angus. They cite *Macho v. Mahowald*, 374 N.W.2d 312 (Minn.App.1985), *pet. for rev. denied* (Minn. Nov. 4, 1985), relating to the liability of *owners* of animals. They further argue that the court erred by failing to instruct the jury according to *Macho*.

The court correctly ruled that this instruction was inapplicable. The court noted that there was no claim that the animal was dangerous, but instead the claim was that the Contest was conducted negligently.

### DECISION

The trial court's response to the jury's question was prejudicial error and requires a new trial on the issue of liability.

Reversed and remanded.