Paul M. STEINER, et al., Respondents,

v.

BEAUDRY OIL & SERVICE, INC., d/b/a
Beaudry Oil Company and Car Wash,
Appellant.

No. C5–95–1455.

Court of Appeals of Minnesota.

March 12, 1996.

Review Denied May 21, 1996.

Randall J. Fuller, Gary T. LaFleur, Babcock, Locher, Neilson & Mannella, Anoka, MN, for Respondents.

Thomas D. Jensen, William L. Davidson, Lind, Jensen & Sullivan. P.A., Minneapolis, MN, for Appellant.

Considered and decided by LANSING, P.J., and RANDALL and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellants Paul M. and Deborah A. Steiner sued respondent Beaudry Oil & Service, Inc., d/b/a Beaudry Oil Company and Car Wash (Beaudry Oil), claiming negligence after fuel oil leaked out of a storage tank and damaged their property. Beaudry Oil had delivered the fuel oil to their home. Beaudry

Oil appeals from the trial court's denial of its motions for a new trial and for an equitable lien. We affirm because the trial court (1) properly instructed the jury and allowed comment by counsel under Minn.R.Civ.P. 49.01(b); (2) properly refused to grant Beaudry Oil an equitable lien against any reimbursement the Steiners might receive under Minn.Stat. § 115C.09 (1994); and (3) committed no evidentiary or other reversible errors.

## FACTS

Beginning in 1985, the Steiners purchased fuel oil from Beaudry Oil for their home in Elk River, Minnesota. The Steiners had two tanks for oil storage. One tank was located outside the house, above the ground, with a pipe extending into a second below-ground tank located in the basement of the house. The connecting pipe was underground and not visible. The basement tank was eight feet lower than the outside tank. There was a shut-off valve located on the outside tank, which, when opened, allowed oil from the outside tank to flow into the basement tank.

Paul Steiner testified that he did not understand exactly how this double tank system worked, but that he knew the oil drained from the outside tank to the basement tank when he opened the valve. Steiner acknowledged that he generally tried to shut the valve before Beaudry Oil delivered oil. He claimed, however, that on at least one occasion he realized he had not closed the valve. When he later checked, the valve was closed, so he assumed that a Beaudry Oil employee had closed it.

On September 30, 1993, Beaudry Oil delivered approximately 450 gallons of oil to the Steiners. The delivery driver testified that he noticed the valve on the outside tank and knew there were two tanks. He testified he was aware that if there were multiple tanks, the valve between them must be closed or a spill could result. The driver, however, did not check the status of the valve. An expert called by the Steiners, Roland Schinzel, testified that the driver should have been provided with instructions and information before going to the Steiners' home and that the driver should have closed the valve.

Because the valve had not been closed, the oil in the outside tank slowly flowed into the lower basement tank. The oil in the basement tank was then displaced up and through a vent pipe, and leaked into the ground near the foundation of the Steiners' home.

The Steiners discovered the spill that evening when they noticed a heavier than normal oil odor. Paul Steiner testified he found the valve open and closed it. He claimed that he called Beaudry Oil and the Minnesota Pollution Control Agency (MPCA) the next day, October 1. MPCA employee Richard Kable, however, testified that Paul Steiner first reported the spill to the agency on October 5.

The Steiners claimed it cost them approximately $30,000 to clean up the spill, a sum that included accrued interest owed to the contractors they hired. The initial billings from the contractors totalled approximately $25,000. The cleanup included the removal of approximately 50 to 60 cubic yards of soil, replacement of part of the foundation, and other measures.

Following trial, the jury found the Steiners 40 percent at fault and Beaudry Oil 60 percent at fault. The jury found total damages of $25,742.81 for the cleanup.

Beaudry Oil then moved for an equitable lien against any reimbursement the Steiners might receive under the Petroleum Tank Release Cleanup Act (Petrofund), Minn.Stat. §§ 115C.01–.13 (1994). Beaudry Oil also moved for a new trial, claiming that the trial court erred in its jury instructions on comparative fault, in allowing counsel to comment on the effect of comparative fault apportionment, and in several evidentiary and other rulings. Beaudry Oil appeals from the trial court's denial of its posttrial motions.

## ISSUES

I. Did the trial court err in instructing the jury on the effect of fault apportionment and in allowing counsel to comment on that effect during closing argument?

II. Did the trial court properly deny Beaudry Oil's motion for an equitable lien

against any reimbursement the Steiners might receive from the Petrofund?

III. Did the trial court commit evidentiary or other errors?

## ANALYSIS

### I

The trial court instructed the jury regarding comparative fault:

> The law requires that fault be apportioned among those parties found to be at fault in causing the plaintiff's property damage. If by your answers to Questions Two and Four you have determined that both parties are at fault and that their fault was a direct cause of plaintiff's property damage, you must apportion fault among them by answering Question Number Five. Plaintiffs may not recover from a defendant when their negligence is greater than the negligence of the defendant. Also any damages awarded by you will be reduced by the plaintiff's applicable percentage of fault.

During closing argument, the Steiners' attorney explained:

> If you are to find, for example, a 50–50 percent fault split and if you were to find the damages for the clean up are $30,000, then * * * Mr. and Mrs. Steiner will receive 50 percent of the $30,000, in other words, $15,000. If you would find that Beaudry Oil was 90 percent and Mr. Steiner was ten, and again if you found [damages of] * * * $30,000, then the Steiners would receive 90 percent of the $30,000. But if you find as I just indicated, that Beaudry is 49 and that Steiner is 51, then the result of that is because Mr. Steiner is the higher percentage, more than 50 percent at fault, the result will be zero even though you put down money in the damages questions and you do have to answer those damages questions. I tell you this not to try to get you to manipulate the figures because you're not supposed to and I don't want you to. You should decide the figures based upon the evidence in this case. I tell you this just for information purposes.

Beaudry Oil insists that the trial court's instruction and these comments by counsel were improper and constitute reversible error.

■ Minn.R.Civ.P. 49.01 deals with special verdicts and provides:

> (a) * * * Except as provided in Rule 49.01(b), neither the court nor counsel shall inform the jury of the effect of its answers on the outcome of the case.

> (b) In actions involving Minn.Stat. c. 604 the court shall inform the jury of the effect of its answers to the comparative fault question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law or complex issues of law or fact are involved which may render such instruction or comment erroneous, misleading, or confusing to the jury.

Rule 49.01(b) contemplates the use of examples and hypotheticals explaining how a plaintiff's damages might be reduced by the apportionment of fault. *See Christopherson v. Independent Sch. Dist. No. 284,* 354 N.W.2d 845, 847 (Minn.App.1984) (Rule anticipates judge will inform jury generally of effect of its apportionment of negligence, and counsel may discuss effects of various answers, including use of examples) (quoting 4 J. Hetland & O. Adamson, *Minnesota Practice,* Minnesota Jury Instruction Guides 129–30 (1974), which discusses purpose of Rule 49.01 according to Minnesota Supreme Court Advisory Committee). Indeed, it is insufficient for a trial court merely to instruct a jury that a plaintiff will recover if his fault is not greater than the fault of the person against whom he seeks to recover: the court must allow comment on the effect of the jury's answers to the percentage of negligence questions. *See Christopherson,* 354 N.W.2d at 847–48. Thus, the instructions and comment by counsel in this case were proper under Rule 49.01(b).

■ Nevertheless, we must make two additional comments. While Rule 49.01(b) requires that the jury be informed of the effect of its apportionment of negligence, the jury still must be cautioned to determine damages without regard to any of its other special verdict answers. *See Rosenthal v. Kolars,*

304 Minn. 378, 383, 231 N.W.2d 285, 288 (1975) (jury must answer negligence and damage questions without regard to one another and must determine what amount of damages would fairly and adequately compensate plaintiff without regard to any of the other special verdict answers); *see also Hassler v. Simon,* 466 N.W.2d 434, 436–37 (Minn. App.1991) (Rule 49.01 does not allow trial court to confirm jury's question that "[i]f no parties are found negligent, as a direct cause, then the plaintiff will not recover from any source.") Our review of the instructions, comments, and damages award in this case satisfies us that the jury understood its role in answering the questions on fault apportionment and damages independently of one another.

■ Our second comment involves counsel's use of the $30,000 figure in his examples. Although the figure is close to the damages amount sought by the Steiners, counsel's use of this figure does not mandate reversal. *See Steinhaus v. Adamson,* 304 Minn. 14, 22–23, 228 N.W.2d 865, 870 (1975) (no prejudicial error when trial court explained to jury that damage award of $100,-000 would be reduced by $40,000 if plaintiff found 40% at fault). The jury awarded $25,-742.81 in damages for the cost of the cleanup, a figure that the evidence supports and that shows the jury rejected some of the Steiners' claimed cleanup costs. Under these circumstances, no prejudice resulted from counsel's use of the $30,000 figure. *See Bardsley v. IPEC, Inc.,* 382 N.W.2d 221, 224–25 (Minn. App.1986) (court's refusal to allow plaintiff's counsel to present hypothetical examples during closing argument did not require new trial when verdict did not preclude plaintiff's

recovery and plaintiff did not demonstrate prejudice).

## II

The Steiners have applied for reimbursement from the Petrofund of 90% of their claimed cleanup costs of $28,967.89, for an approximate reimbursement of $26,000. *See* Minn.Stat. § 115C.09. Beaudry Oil insists that the trial court's refusal to grant it an equitable lien against the Steiners' reimbursement creates a real risk of double recovery because the Steiners currently stand to receive 60 percent of their cleanup costs from their judgment against Beaudry Oil and 90 percent of their cleanup costs from the Petrofund.

■ The trial court properly determined that there was little or no risk of double recovery in this case. The Petrofund includes a policy against double recovery and has been interpreted accordingly. *See In re Application of Q Petroleum,* 498 N.W.2d 772, 781 (Minn.App.1993), *review denied* (Minn. July 15, 1993); *In re Application of Crown CoCo, Inc.,* 458 N.W.2d 132, 138 (Minn.App. 1990) (to prevent double recovery and further purposes of Act, Petrofund reimbursements denied to responsible persons whose cleanup costs already covered by insurance). In addition, the Petrofund Board has not made a final determination on the Steiners' application for reimbursement. The Steiners acknowledge that any money they receive from Beaudry Oil to compensate them for their cleanup costs will be deducted from their Petrofund reimbursement.[1] Thus, the trial court properly denied Beaudry Oil's motion for an equitable lien against any Petro-

---

1. In their appendix, the Steiners include an October 9, 1995 letter from the Petrofund Board that explains their application for reimbursement has been conditionally approved *"less any financial return you may receive through the courts."* Beaudry Oil moves in its reply brief to strike any references to this letter. *See Safeco Ins. Cos. v. Diaz,* 385 N.W.2d 845, 847 (Minn.App.1986) (striking material and references to material not part of· record on appeal), *review denied* (Minn. June 30, 1986). Under limited circumstances, however, this court has inherent power to look beyond a trial court record. *See In re Objections & Defenses to Real Property Taxes,* 335 N.W.2d

717, 718 n. 3 (Minn.1983) (uncontroverted affidavits reciting facts taken from public records admissible at appellate level). The letter from the Petrofund Board, which was not available at the time of trial in this case, is uncontradicted and is not submitted as a basis for reversal of the trial court's decision. To the contrary, it merely confirms the court's conclusion that the Petrofund Board will not allow double recovery and will deduct any judgment received by the Steiners from Beaudry Oil. Thus, it may be considered by this court on appeal and need not· be stricken.

fund reimbursement the Steiners might receive.

## III

■ Decisions to admit or exclude evidence rest within the broad discretion of the trial court and its rulings will not be disturbed unless based on an erroneous view of the law or an abuse of discretion. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn. 1990). Beaudry Oil claims it is entitled to a new trial because the trial court committed several prejudicial errors:

■ 1. Beaudry Oil insists that the trial court erred by not requiring the Steiners to choose their measure of damages, either the cost of repair or the diminution in value, before the case was submitted to the jury. *See Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.,* 457 N.W.2d 175, 183 (Minn. 1990) (damages typically limited to diminution in value if cost of restoring property to original condition exceeds that value). The trial court also omitted the following sentence from the jury instruction on damages: "The total damages * * * cannot exceed the difference in value before and after the accident." *See* 4 *Minnesota Practice,* CIVJIG 185(2)(C) (1986). Neither party, however, offered any evidence regarding the post-spill, pre-repair value of the property. Thus, there was no evidence from which the jury could measure damages for any diminution in value.

■ 2. The trial court excluded testimony regarding the Steiners' application for Petrofund reimbursement. This evidence was properly excluded because it had little or no bearing on the issue of Beaudry Oil's negligence. It was also speculative because the Petrofund Board had not yet made a final determination regarding any reimbursement. *See* Minn.R.Evid. 401 (relevant evidence tends to make existence of relevant fact more or less probable); Minn.R.Evid. 402 (irrelevant evidence inadmissible). The trial court admitted some charges from the Steiners' witness, David Novak, that included time he spent preparing reports for the Steiners' Petrofund application. Beaudry Oil, however, failed to object to admission of the exhibit that included these charges. Any challenge to those charges has therefore been waived. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988); Minn.R.Evid. 103(a)(1) (timely objection must be made to claim erroneous admission of evidence).

■ 3. The trial court ruled that witnesses Richard Kable and Ken Beaudry could testify only as lay witnesses under Minn.R.Evid. 701. The court also rejected Beaudry Oil's request that these witnesses be allowed to testify that the Steiners' cleanup costs would have been less had they acted more promptly instead of waiting several days to report the spill. The trial court acted within its discretion in making these rulings, because no evidence was presented to show that either witness possessed any technical or specialized knowledge or that either witness possessed first-hand knowledge of the cleanup and costs involved in this particular spill. *See Holweger v. Great N. Ry.,* 269 Minn. 83, 95, 130 N.W.2d 354, 362 (1964) (trial court did not abuse discretion in excluding employee's opinion on condition of automatic coupler involved in accident when evidence failed to show employee had personal knowledge of coupler).

■ 4. The trial court ruled that sufficient foundation existed for the Steiners' lay witness, David Novak, to testify that the Steiners' delay in responding did not affect the cost of cleanup. Novak, a self-employed environmental consultant with a degree in geological engineering, had been hired by the Steiners for advice and was directly involved in the cleanup. Under these circumstances, the trial court properly exercised its discretion in allowing Novak to give his opinion. *See id.*

■ 5. The trial court ruled there was sufficient foundation for Roland Schinzel to testify as an expert regarding Beaudry Oil's duty. *See* Minn.R.Evid. 702, 703. The Steiners' attorney questioned Schinzel extensively about his 29 years of experience with several different home heating oil companies and about his familiarity with the standard procedures those companies used. The trial court thus properly exercised its discretion in allowing Schinzel to testify as an expert on

the subject of delivering home heating oil. *See Benson v. Northern Gopher Enters.*, 455 N.W.2d 444, 445–46 (Minn.1990) (trial court has wide latitude to determine whether sufficient foundation exists for witness to state opinion).

Finally, we have considered other issues raised by Beaudry Oil and conclude that none offer a basis for reversal.

## DECISION

The trial court's denial of Beaudry Oil's posttrial motions is affirmed.

**Affirmed.**