LAKE SUPERIOR CENTER
AUTHORITY, et al.,
Appellants,

v.

HAMMEL, GREEN & ABRAHAMSON,
INC., defendant and third party
plaintiff, Respondent,

Rutherford & Chekene, a California
corporation, defendant and third
party plaintiff, Respondent,

v.

Melander, Melander & Schilling, Inc.,
et al., Third Party Defendants,

and

Rutherford & Chekene, a California
corporation, Defendant and
Fourth Party Plaintiff,

v.

Concrete Restorers, Inc., Fourth
Party Defendant.

Nos. A05–800, A05–1533.

Court of Appeals of Minnesota.

June 6, 2006.

sions to determine whether they violate public policy).

464

Stephanie A. Ball, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, MN, for appellants.

Donald G. Clapp, Clapp & Erickson, St. Paul, MN, for respondent Hammel, Green & Abrahamson.

Jeffrey W. Coleman, John A. Markert, Stephen F. Buterin, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for respondent Rutherford & Chekene.

William M. Hart, Michael D. Hutchens, Erica Gutmann Strohl, Meagher & Geer, P.L.L.P., Minneapolis, MN, for respondent Marcy Construction Company.

Considered and decided by KALITOWSKI, Presiding Judge; SHUMAKER, Judge; and MINGE, Judge.

## OPINION

KALITOWSKI, Judge.

In this appeal following a trial regarding alleged defects in the design of a large exhibit tank in an aquarium, appellants contend that the district court erred by (1)

denying their motion for new trial; (2) denying their motion for judgment notwithstanding the verdict; (3) denying their motion to amend the pleadings; and (4) awarding respondents excessive expert-witness fees. By notice of review, respondent architect argues that the district court erred by (1) failing to dismiss appellants' complaint for failure to timely serve an expert-review affidavit; (2) denying motions for summary judgment and directed verdict; (3) granting a partial stay of enforcement of the judgment of costs and disbursements; and (4) denying its request for daily transcript fees. Respondent tank designer also argues that the district court erred by denying the motion for summary judgment. We affirm the district court in all respects.

## FACTS

Appellant Lake Superior Center Authority (Authority) is a public corporation formed by an act of the legislature in 1990. Appellant Lake Superior Center (Center) is a nonprofit corporation formed to develop and obtain funding for the Great Lakes Aquarium in Duluth, Minnesota. In June 1997, Authority and respondent Hammel, Green and Abrahamson, Inc. (HGA) entered into an architectural contract in which HGA agreed to provide lead architectural, design, and engineering services relating to the construction of the aquarium. HGA contracted with respondent Rutherford and Chekene, Inc. (R & C), a California design firm, to consult on the project and provide design services for the project's exhibit tanks.

Authority also contracted with the following parties: (1) Koosman Project Management Services (Koosman) to serve as the owner's agent; (2) Adolfson & Peterson, Inc./Johnson–Wilson Construction Management, Inc. (A & P/JW) to serve as construction manager on the project; (3)

Marcy Construction Company (Marcy) to serve as the project's concrete contractor; and (4) Krech/Ojard and Associates, P.A. (K/O) to provide architectural and engineering inspection services on the project. Marcy contracted with Duluth Ready Mix (DRM) and Concrete Restorers (CR) to provide labor and materials. Center retained American Engineering and Testing, Inc. (AET) to provide two different services on the project, engineering inspection and concrete mix design. And HGA contracted with Melander, Melander and Schilling (MMS) to provide consulting services.

Construction began on the project in December 1998. In October 1999, the project encountered substantial problems with the concrete poured for the walls of the Isle Royal Tank, the largest exhibit tank in the aquarium. Repair of the defective walls required significant additional labor and expenditures, but the aquarium eventually opened on July 29, 2000.

In March 2001, Marcy brought an arbitration claim against Authority to recover expenses it incurred as a result of repair work on the Isle Royal Tank. Authority counterclaimed, alleging that Marcy owed it damages for inadequate and defective work. In January 2002, Marcy and Authority settled their claim by entering into a *Pierringer* agreement. Under the agreement, Authority tendered payment to Marcy and agreed to settle, release, and discharge its claims against Marcy. Authority also agreed to indemnify and hold Marcy harmless for any claims for contribution or indemnity made by others jointly liable with Marcy for damages.

On May 3, 2002, appellants filed a complaint against HGA asserting, among other things, claims of negligence, vicarious liability, and contribution and indemnity. Appellants argued that HGA was negligent in providing project design and specifica-

tions that led to defects in the Isle Royal Tank and was vicariously liable for the actions of its subconsultants. HGA also filed a third-party complaint against other parties involved in construction of the tank, including R & C, MMS, A & P/JW, Koosman, AET, and K/O.

On August 6, 2002, appellants served their affidavit certifying expert review. On August 9, 2002, appellants filed an application to waive and/or extend the time limits for certification of expert review under Minn.Stat. § 544.42. The district court held that the affidavit served on August 6 was timely. HGA moved to dismiss appellants' complaint for failure to abide by the time limits for certification of expert review, but the district court denied the motion. Both this court and the Minnesota Supreme Court denied HGA's subsequent petitions for review of the district court's denial of the motion to dismiss.

In spring of 2003, R & C and HGA moved for summary judgment, asserting that the statute of limitations set out in Minn.Stat. § 541.051 barred appellants' claims. The district court denied the motion for summary judgment.

In October 2003, appellants amended their complaint to add R & C as a defendant, arguing that R & C was also liable due to its inadequate and defective project specifications. R & C denied the claims and brought counterclaims, cross-claims against HGA, and third-party claims against Marcy, DRM, K/O, AET, A & P/JW, and CR.

In April 2004, HGA and R & C entered into a settlement, defense, and indemnity agreement. Under the settlement, HGA agreed to release its claims against R & C and to hold R & C harmless to the extent of HGA's insurance policy. The agreement stated that it was a *Pierringer* release as approved and interpreted by *Pierringer v. Hoger,* 21 Wis.2d 182, 124

N.W.2d 106 (1963), and *Frey v. Snelgrove,* 269 N.W.2d 918 (Minn.1978).

By May 2004, HGA and R & C had both asserted claims against Marcy. Marcy moved for summary judgment based on its settlement with Authority. The district court granted Marcy's motion, dismissing HGA's and R & C's claims against Marcy because appellants had an obligation to indemnify Marcy under their settlement. On May 13, 2004, HGA and R & C jointly made a rule 68 offer of settlement to appellants for $1,000,000, which was rejected by appellants.

During July and August of 2004, HGA entered into settlement agreements with K/O, AET, and A & P/JW and moved to dismiss its claims against the settling parties. The district court dismissed the settling parties with prejudice, stating that the dismissal did not preclude appellants from asserting any claims against the dismissed parties, subject to applicable rules of law and procedure.

The trial began with voir dire on August 31, 2004, and lasted almost two months. At the close of appellants' case, the remaining defendants, HGA, R & C, and third-party defendant MMS, moved for directed verdict. The court granted the motion regarding MMS and denied it regarding HGA and R & C.

The jury returned its special verdict on October 23, 2004. The jury found that (1) respondents HGA and R & C were not negligent; (2) K/O, A & P/JW, AET as concrete-mix designer, and CR were not negligent; (3) Marcy and AET, as special inspector, were negligent, and fault was apportioned 75% and 25%, respectively; (4) appellants and Koosman were negligent but their negligence was not a direct cause of the tank defects; and (5) $270,000 could reasonably repair the defects on the tank. The jury also found that appellants discov-

ered or should have reasonably discovered their injury due to the defective and unsafe condition of the tank on or before May 1, 2000. The district court dismissed HGA and R & C based on the jury's special verdict and found both of them entitled to costs and disbursements. The court also dismissed DRM and CR.

The next day, appellants moved to amend the pleadings in accordance with Minn. R. Civ. P. 14.01, 15.02. The motion sought to add various third-party defendants as direct defendants. Additionally, appellants asked the court to determine that certain parties were liable in indemnity. In December 2004, appellants moved for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. On February 22, 2005, the district court issued orders denying appellants' motions for amendment and indemnity, JNOV, and a new trial.

In March 2005, HGA and R & C submitted to the court their applications for costs and disbursements. Appellants objected to taxation of costs and disbursements against them generally and raised specific objections to many of respondents' itemized costs. In April 2005, appellants also moved to stay enforcement or execution of any monetary judgment in favor of HGA and R & C during appellate proceedings.

After a hearing, the court issued its order as to costs and disbursements and appellants' motion for a stay on June 7, 2005. The district court reduced or denied parts of HGA's and R & C's costs and concluded that HGA was entitled to $256,612.52 and R & C was entitled to $89,447.04. Regarding appellants' motions to stay entry of judgment, the court denied the motion as to Center and granted the motion in part as to Authority.

On appeal, appellants' arguments focus primarily on the district court's posttrial orders whereas respondents' issues focus on pretrial orders. And both appellants and respondents challenge aspects of the court's order of costs and disbursements. We address the parties' issues in chronological order.

## ISSUES

1. Did the district court err by denying respondents' motion to dismiss based on appellants' failure to timely serve an expert-review affidavit under Minn.Stat. § 544.42?

2. Did the district court err by denying respondents' motions for summary judgment and directed verdict?

3. Did the district court abuse its discretion by denying appellants' motion to amend the findings?

4. Did the district court err by denying appellants' motions for judgment notwithstanding the verdict and a new trial?

5. Did the district court abuse its discretion in awarding costs and disbursements or by granting Authority a partial stay of enforcement of the judgment?

## ANALYSIS

### I.

HGA argues that the district court erred by denying its motion to dismiss the malpractice claim against it because appellants failed to timely file an affidavit of expert review. A district court's decision regarding whether to dismiss a malpractice claim for noncompliance with statutory requirements regarding submission of expert affidavits will be reversed only upon an abuse of discretion. *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 725 (Minn.2005) (reviewing dismissal of complaint for noncompliance with expert disclosure). Questions of statutory construction are legal questions reviewed de novo. *Sorenson v. St. Paul*

*Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990).

Negligence actions against professionals, including architects, must comply with expert-disclosure requirements under Minn. Stat. § 544.42, subd. 2 (2004). *See Middle River–Snake River Watershed Dist. v. Dennis Drewes, Inc.*, 692 N.W.2d 87, 90 (Minn.App.2005) (discussing expert-affidavit requirements in negligence action against engineer). The expert-review provisions of Minn.Stat. § 544.42 (2004) are similar to those contained in Minn.Stat. § 145.682 (2004), the medical-malpractice expert-affidavit statute. *See id.* at 91 (discussing parallel reasoning used in construing requirements of Minn.Stat. § 145.682 and Minn.Stat. § 544.42); *see also House v. Kelbel*, 105 F.Supp.2d 1045, 1051 (D.Minn.2000) (stating that the Minnesota legislature "used § 145.682 as a blueprint in drafting the language of § 544.42").

The affidavit statute for nonmedical professional malpractice actions requires a plaintiff to serve two expert-witness disclosure affidavits on an adverse party. Minn. Stat. § 544.42, subd. 2. The first, an affidavit of expert review, must establish that an expert reviewed the case, leading to the opinion that the defendant deviated from the applicable standard of care and the action caused plaintiff's injury. *Id.*, subds. 2(1), 3(a)(1). The second, the expert-identification affidavit, identifies the expert witnesses and provides the substance of the experts' opinions and a summary of the basis for each opinion. *Id.*, subds. 2(2), 4(a). It is the affidavit of expert review that is at issue here.

The affidavit of expert review must generally be served with the pleadings. *Id.*, subd. 2(1). But the party's attorney may state in an affidavit served with the pleadings that the party could not reasonably obtain expert review before the action was commenced because of the applicable stat-ute of limitations. *Id.*, subd. 3(a)(2). If the party executes an affidavit under subdivision 3(a)(2), the expert-review affidavit must be served within 90 days after service of the complaint. *Id.*, subd. 3(b). Failure to then serve the expert-review affidavit within 90 days after the complaint "results, upon motion, in mandatory dismissal of each cause of action ... as to which expert testimony is necessary to establish a prima facie case." *Id.*, subd. 6(b). The requirements for this affidavit "may be waived or modified if the court ... determines, upon an application served with commencement of the action, that good cause exists for not requiring the certification." *Id.*, subd. 3(c).

Here, appellants filed their complaint on May 3, 2002. Accompanying the complaint was an affidavit of appellants' counsel stating that expert review could not reasonably be obtained before commencing the action because of the applicable statute of limitations. On August 6, 2002, HGA informed appellants that it would seek dismissal because they had failed to serve the expert-review affidavit. Appellants served the affidavit that same day. On August 9, 2002, appellants filed an application to waive or extend the time limits for certification of expert review under Minn.Stat. § 544.42.

On September 23, 2002, the district court found that good cause existed to extend the time limits of section 544.42 and that the August 6 affidavit would be considered timely. The court made specific findings that good cause had been shown and that appellants made good-faith efforts to locate an expert. The court further found that the good-cause provision of Minn.Stat. § 544.42, subd. 3(c), did not apply and that the matter was more appropriately addressed under Minn. R. Civ. P. 6.02. The court reasoned that the statutory conditions were procedural, and there-

fore subject to extension under rule 6.02 because appellants sufficiently demonstrated excusable neglect. HGA moved to dismiss appellants' complaint for failure to abide by the time limits for certification of expert review, but the district court denied the motion, standing by the reasoning it set out when it granted appellants' request to extend the time limits.

■ HGA argues that the district court erred by failing to dismiss appellants' complaint because appellants did not file their affidavit within the 90 days allowed under Minn.Stat. § 544.42, subd. 3(b). We disagree.

Minnesota courts have held that failure to strictly satisfy the expert disclosure requirements will result in dismissal of the claim with prejudice. *Broehm,* 690 N.W.2d at 726; *see also Teffeteller v. Univ. of Minn.,* 645 N.W.2d 420, 430–31 (Minn. 2002) (dismissal of malpractice action mandated where expert disclosure contains only broad and conclusory statements); *Lindberg v. Health Partners, Inc.,* 599 N.W.2d 572, 578 (Minn.1999) (dismissal mandated where expert disclosure falls short of the substantive disclosure requirements). And this court has upheld the district court's dismissal of a complaint for failure to serve an expert-identification affidavit within 180 days after initiating its claim. *Middle River,* 692 N.W.2d at 90–91. Further, we have recently held that the "safe-harbor" provision of Minn.Stat. § 544.42, subd. 6(a), allows a plaintiff to submit a second affidavit of expert review where the district court ruled the initial affidavit inadequate. *Noske v. Friedberg,* 713 N.W.2d 866 (Minn.App.2006).

■ But Minnesota courts have not addressed whether Minn.Stat. § 544.42 may be read in conjunction with Minn. R. Civ. P. 6.02, which allows the district court to expand statutory time periods, even after expiration of the time period, upon a show-ing of excusable neglect. In the medical malpractice context, Minnesota courts may allow an extension of the time period for serving expert affidavits. *Stern v. Dill,* 442 N.W.2d 322, 324–25 (Minn.1989); *Parker v. O'Phelan,* 414 N.W.2d 534, 538 (Minn.App.1987), *aff'd by an equally divided court,* 428 N.W.2d 361 (Minn.1988). In *Stern,* the plaintiff failed to timely file the second affidavit, identifying expert witnesses within 180 days, under Minn.Stat. § 145.682, subds. 2(2), 4 (1988). 442 N.W.2d at 323. The defendant moved to dismiss, relying on the statutory language requiring "mandatory dismissal with prejudice." *Id.* Notwithstanding the penalty clause language requiring mandatory dismissal, the supreme court concluded that the statute should be read in conjunction with Minn. R. Civ. P. 6.02 because the statutory time limits were procedural and could therefore be extended, even after the time limits expired, upon a showing of excusable neglect. *Id.* at 324.

Here, the 90 days allotted to appellants under Minn.Stat. § 544.42, subd. 3(b), ran on August 1, 2002. And appellants did not file their expert-review affidavit by that date. Accordingly, Minn.Stat. § 544.42, subd. 6(b), required dismissal of appellants' claims. Thus, we must determine whether the district court erred by applying Minn. R. Civ. P. 6.02 to extend the time in which appellants could serve their affidavit.

Rule 6.02 permits trial courts to extend time limits imposed by statute "provided the motion for extension is made before the time expires." *Parker,* 414 N.W.2d at 536. If the motion is made after time expires, as in this case, the court may enlarge the time limit "where the failure to act was the result of excusable neglect." Minn. R. Civ. P. 6.02.

■■ To the extent a statute is inconsistent or in conflict with the procedural, pleading, or practical edict under a rule of civil procedure, the rule generally prevails. *Wick Bldg. Sys., Inc., v. Employers Ins.,* 546 N.W.2d 306, 308 (Minn.App.1996) (citing Minn. R. Civ. P. 81.01(c)). Substantive statutes create, define, and regulate rights. *Stern,* 442 N.W.2d at 324 (quoting *Meagher v. Kavli,* 251 Minn. 477, 488, 88 N.W.2d 871, 879–80 (1958)). A statute that does not create a new cause of action or affect a defense is procedural. *State v. Johnson,* 514 N.W.2d 551, 555 (Minn.1994) (quotation omitted).

The statute at issue here is inconsistent with rule 6.02. The statute does not allow extension of the time limit when the extension is sought after expiration of the relevant time period. But the rule allows such an extension after the expiration of the time limit upon a showing of excusable neglect. *See* Minn.Stat. § 544.42, subd. 3(c) (allowing waiver or modification of expert-review certification requirement for good cause only where application is served at the commencement of the action). Like section 145.682, section 544.42 imposes additional requirements on plaintiffs before they may enforce their claims, but does not create a cause of action or change plaintiffs' basic right to sue for professional malpractice. Consequently, we conclude that the time limits imposed by Minn.Stat. § 544.42 are procedural and can therefore be extended, even after the time limits expire, upon a showing of excusable neglect pursuant to Minn. R. Civ. P. 6.02.

Although *Stern* involved a different statute and the expert-identification deadline rather than the expert-review deadline, its reasoning supports our conclusion here. This case and *Stern* are procedurally similar in that plaintiffs filed their affidavits late and defendants moved for dismissal under the "mandatory dismissal" provisions of the relevant statutes. And as noted above, the expert-review provisions of section 544.42 are similar to those at issue in *Stern* under section 145.682. HGA correctly asserts that the medical malpractice statute lacks a provision specifically mandating dismissal where a party fails to file an affidavit within the 90–day period allowed after failure to file because of the impending statute of limitations. *See* Minn.Stat. § 145.682, subd. 6. But that difference does not materially affect whether Minn.Stat. § 544.42 is a procedural statute inconsistent with rule 6.02.

■ Excusable neglect is found when (1) there is a reasonable defense on the merits; (2) there is a reasonable excuse for the failure to answer; (3) the party acted with due diligence after notice of the entry of judgment; and (4) no substantial prejudice results to other parties. *Parker,* 414 N.W.2d at 537. The district court's extension of a time limit under rule 6.02 is discretionary and will not be reversed absent an abuse of that discretion. *Id.*

■ The district court found that appellants fulfilled all four elements of excusable neglect. First, the court found a reasonable basis for appellants' claim, based on the expert affidavit eventually submitted. Second, the court found that appellants demonstrated a reasonable excuse for their failure to comply with the statute, given the uniqueness of the aquarium facility and the conflicts of interest preventing local experts from providing opinions in Duluth's relatively small engineering community. Third, the court was satisfied that appellants used due diligence in trying to secure expert review. Fourth, the court found that HGA would suffer no meaningful prejudice from the expansion of the time limits because the litigation would still progress during the time exten-

sion, allowing the parties to conduct discovery.

 The record supports the district court's finding of excusable neglect. Although difficulty in securing a witness may not always provide a reasonable excuse for a party's delay, we cannot say that the district court abused its discretion by finding that appellants showed excusable neglect in failing to timely file their affidavit of expert review.[1]

Because Minn.Stat. § 544.42 is a procedural statute inconsistent with Minn. R. Civ. P. 6.02, we hold, consistent with *Stern*, that the district court may expand the time limits for serving expert-review affidavits, even after the statutory time limits have expired, upon a showing of excusable neglect pursuant to rule 6.02. And we conclude that on this record, the district court did not abuse its discretion in finding that appellants demonstrated excusable neglect sufficient to expand the time limits for filing their affidavit of expert review.

## II.

Both HGA and R & C argue that the district court erred by denying their motion for summary judgment because appellants' claims were time-barred. HGA also argues that the district court erred by denying its motion for directed verdict.

### 1. Summary judgment

On appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in ap-

plying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). On appeal, this court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Id.*

 The statute of limitations for this cause of action states:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, . . . shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury. . . .

Minn.Stat. § 541.051, subd. 1(a) (1998). Under this provision, "the statute of limitations begins to run when an actionable injury is discovered or, with due diligence, should have been discovered." *Dakota County v. BWBR Architects*, 645 N.W.2d 487, 492 (Minn.App.2002); *see Lake City Apartments v. Lund–Martin Co.*, 428 N.W.2d 110, 112 (Minn.App.1988), *review denied* (Minn. Oct. 19, 1988). When rea-

---

1. HGA argues that even if we do not hold that the district court erred by failing to dismiss appellants' claim, we should create a new legal rule to allow for immediate appeal of a denial of a motion to dismiss under Minn. Stat. § 544.42, subd. 6(b). But an order denying a motion to dismiss is generally nonappealable. *Hunt v. Nevada State Bank*, 285

Minn. 77, 88–89, 172 N.W.2d 292, 299–300 (1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). And the task of extending existing law falls to the supreme court or the legislature, not to this court. *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987).

sonable minds can differ about when the injury was discovered, summary judgment is inappropriate because the issue should be left to the trier of fact. *200 Levee Drive Assocs. v. Bor–Son Bldg. Corp.,* 441 N.W.2d 560, 564 (Minn.App.1989); *Lake City,* 428 N.W.2d at 112.

▆▆▆▆ Additionally, "[w]hen a party allegedly responsible for remedying a defect in real property makes assurances or representations that the defect will be repaired, that party may be estopped from asserting a statute-of-limitations defense if the injured party reasonably and detrimentally relied on the assurances or representations." *Rhee v. Golden Home Builders,* 617 N.W.2d 618, 622 (Minn.App.2000) (citations omitted). Such assurances may toll statutes of limitation on the theory of equitable estoppel. *U.S. Leasing Corp. v. Biba Info. Processing Servs., Inc.,* 436 N.W.2d 823, 826 (Minn.App.1989), *review denied* (Minn. May 24, 1989). Whether equitable estoppel applies is a question of fact unless only one inference can be drawn from the facts. *Rice St. VFW, Post No. 3877 v. City of St. Paul,* 452 N.W.2d 503, 508 (Minn.App.1990).

Here, Marcy poured concrete for the tank on September 15 and 16, 1999. When forms holding the concrete were stripped away in late September through early October 1999, it was visually apparent that the concrete walls were defective. Shortly thereafter, representatives from HGA, R & C, the construction manager, and other subcontractors met to discuss the concrete placement. They decided that repair plans would be "jointly arrived at with R & C, HGA, Marcy and the Construction Manager." And an R & C representative found that the tank was repairable and delineated the general steps in the repair process. As the repair process progressed, R & C reviewed Marcy's repair procedures and communicated concerns to

HGA. HGA, in turn, communicated those concerns to Marcy. Repair work continued through at least mid-May of 2000.

Appellants filed suit against HGA on May 3, 2002. On March 19, 2003, R & C brought a pretrial motion for summary judgment, later joined by HGA, claiming that appellants' claims were barred by the two-year statute of limitations under Minn. Stat. § 541.051 (1998). Respondents argued that appellants' claim accrued more than two years before it initiated the action against HGA on May 3, 2002.

The district court denied respondents' motion because appellants had not suffered actionable injury under Minn.Stat. § 541.051 until a date later than May 1, 2000. The court acknowledged that the concrete was noticeably defective in October 1999 but found that significant and material factual disputes existed as to the issues of reliance and estoppel, thereby precluding summary judgment.

▆▆▆ Respondents argue that the district court erred by denying respondents' pretrial motion for summary judgment because Minn.Stat. § 541.051 barred appellants' claims against them. We disagree.

Both R & C and HGA were involved in the repair process. They specifically agreed that the repair plan would be "jointly arrived at with R & C, HGA, Marcy and the Construction Manager." R & C made the initial determination that the tank could be repaired. And R & C and HGA reviewed the repair procedures and communicated their suggestions to relevant contractors. Therefore, fact issues existed as to whether respondents were estopped from asserting the statute-of-limitations defense.

▆▆▆ We reject respondents' argument that the district court's ruling on the summary judgment motion should be considered in light of the jury's verdict. The

jury found that appellants knew or should have known of their injury on or before May 1, 2000. Respondents argue that this finding confirms that the district court should have granted their pretrial motion for summary judgment. But the district court considered the statute-of-limitations claim in May 2003, before the parties had commenced discovery. Our review focuses on the information available to the court at that time and does not consider the jury verdict delivered more than one year later. *Waldner v. Peterson*, 447 N.W.2d 217, 219 (Minn.App.1989) (citation omitted). As of May 2003, fact issues existed as to whether the statute of limitations applied to bar appellants' claims. Therefore, the district court properly denied respondents' motion for summary judgment.

### 2. Directed verdict

■ HGA argues that it was entitled to a directed verdict because appellants failed to call an expert witness qualified to offer an opinion on HGA's performance. HGA's motion for directed verdict, which entailed a fact-specific inquiry into whether testimony from over 20 different witnesses was sufficient to present a fact question for the jury, was denied by the district court. But even if the district court erred by failing to direct a verdict, HGA has not shown how the error prejudiced the outcome of the trial because the jury found that HGA was not negligent. *See Behlke v. Conwed Corp.*, 474 N.W.2d 351, 354 (Minn.App. 1991) (stating that if district court erred by failing to direct a verdict, this court will not grant a new trial unless the error prejudiced the result), *review denied* (Minn. Oct. 11, 1991). Thus, we cannot conclude that the district court committed reversible error when it denied HGA's motion for directed verdict.

### III.

Appellants argue that the district court abused its discretion by denying their posttrial motion to amend the pleadings in accordance with Minn. R. Civ. P. 14.01, 15.02. We disagree.

■ Generally, whether to permit amendment of the pleadings is discretionary with the district court, and its decision will not be reversed absent a clear abuse of that discretion. *Raspler v. Seng*, 215 Minn. 596, 598–99, 11 N.W.2d 440, 441 (1943); *Haase v. Haase*, 369 N.W.2d 311, 316 (Minn.App.1985), *review denied* (Minn. Aug. 29, 1985).

After the trial, appellants moved to amend the pleadings to add as direct party defendants AET, A & P/JW, K/O, DRM, and CR. And appellants asked the court to determine as a matter of law that (1) A & P/JW was liable in indemnity for the judgment against Marcy; and (2) HGA and R & C were liable in indemnity for the judgment against AET. The district court denied appellants' motion in all respects.

Appellants focus their argument on the district court's denial of their request to add AET as a third-party defendant and denial of their request to determine HGA and A & P/JW liable in indemnity. Beyond generally asserting that the court should have granted their motion, appellants assign no specific error.

### 1. AET

■ The court declined to add AET as a defendant because the claim was barred by the statute of limitations under Minn.Stat. § 541.051. As discussed above, that statute states that no action for injury to property shall be brought against a party that performed construction services on property more than two years after discovery of the injury. Minn.Stat. § 541.051. "If a pleading is amended to introduce a new party, the limitations period is calculated as of the date of the

amendment." *Wollan v. Jahnz,* 656 N.W.2d 416, 418 (Minn.App.2003) (citation omitted), *review denied* (Minn. Apr. 29, 2003). The construction and applicability of a statute of limitations is a question of law, reviewed de novo. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn. 1998).

■ When the district court dismissed AET and other third-party defendants before the trial began, it stated that appellants were not precluded from asserting claims against the dismissed parties *"subject to applicable rules of law and procedure."* Thus, although the court had made efforts to notify appellants that they could bring a claim against the dismissed parties, the court did not waive any applicable law or statute of limitations.

Here, the limitations period is calculated as of the date of the proposed amendment, which was November 5, 2004. *See Wollan,* 656 N.W.2d at 418. And appellants fail to present evidence demonstrating that the claim did not accrue until November 5, 2002, or later. Even if repair work tolled the statute, as the court contemplated in denying respondents' motion for summary judgment, that repair work was completed when the aquarium opened on July 29, 2000, if not before. Because Minn.Stat. § 541.051 barred appellants' claim against AET, we conclude that the district court did not abuse its discretion by denying appellants' posttrial request to add AET.

### 2. Duty to indemnify

■ Appellants contend that the district court abused its discretion by denying their request to determine A & P/JW liable in indemnity for the judgment against Marcy. They argue that A & P/JW was liable because it failed to disqualify Marcy from the project. But the jury found A & P/JW not negligent in failing to disqualify Marcy. Because appellants' argument turns on a conclusion directly contrary to the jury finding that A & P/JW was not negligent, and that finding is supported by the evidence, the district court did not abuse its discretion by denying appellant's request to determine A & P/JW liable in indemnity.

Appellants also argue that the district court abused its discretion by denying their request to determine HGA liable in indemnity for the judgment against AET. Because we hold that the district court did not abuse its discretion in denying appellants' motion to add AET as a defendant because that claim was time-barred, we also conclude that the district court did not abuse its discretion in denying appellants' request to find HGA liable to indemnify the claim against AET.

### IV.

Appellants next challenge the district court's denial of their motions for judgment notwithstanding the verdict (JNOV) or a new trial.

### 1. JNOV

■ This court reviews a district court's denial of a motion for JNOV de novo, but the denial "must be affirmed if there is any competent evidence reasonably tending to sustain the verdict." *Thompson v. Hughart,* 664 N.W.2d 372, 376 (Minn.App.2003) (quotation omitted), *review denied* (Minn. Sept. 16, 2003). "Unless the evidence is practically conclusive against the verdict, this court will not set the verdict aside." *Pouliot v. Fitzsimmons,* 582 N.W.2d 221, 224 (Minn.1998) (quotation omitted). "The evidence must be considered in the light most favorable to the prevailing party and an appellate court must not set the verdict aside if it can be sustained on any reasonable theory of the evidence." *Id.*

In challenging the jury's verdict, appellants argue that the jury could not have found Marcy negligent without finding other parties, namely A & P/JW and K/O, negligent as well because those parties' work was closely tied to Marcy's work. They also assert that the part of the jury's verdict finding AET negligent was not supported by the evidence. We disagree.

■ First, appellants claim that because the jury found that Marcy was negligent in pouring the concrete for the tank, the jury should have found A & P/JW negligent for failing to disqualify Marcy from working on the project. The record indicates that an A & P/JW employee testified that he recommended to his employer that Marcy be disqualified from working on the project. But A & P/JW management overrode his recommendation. This testimony, contrary to appellants' assertions, does not establish that A & P/JW breached a duty owed to appellants by allowing Marcy to bid. Viewing the evidence in the light most favorable to the verdict, the jury could have determined that Marcy was qualified to bid on the project but performed its work on the project negligently.

■ Second, appellants argue that the jury's special-verdict finding that K/O was not negligent was not supported by the evidence because K/O was responsible for inspecting Marcy's work. But a K/O representative testified that it was not K/O's role to advise Marcy or other contractors on the means, methods, techniques, or sequences of procedures used. Therefore, the jury could have concluded that Marcy's negligence did not implicate K/O.

■ Third, appellants argue that the part of the jury's special-verdict form finding AET negligent as an inspector was not supported by competent evidence. In denying appellants' motion for JNOV as to

this finding, the court stated that evidence indicated that defects appeared at a low level of the tank's wall, that use of a stiffer concrete mixture could have contributed to those defects, and that AET's inspector failed to observe the misdelivery of the stiffer concrete mix before it was poured into the tank. The record supports the district court's reasoning. The jury could have concluded that AET was negligent in its capacity as special inspector because it failed to notice that the wrong mix was delivered and application of that mix led to defects in the tank's walls.

Competent evidence exists in the record to support the jury's special verdict findings that (1) A & P/JW was not negligent; (2) K/O was not negligent; and (3) AET was negligent in its capacity as a special inspector on the project. Therefore, we conclude that the district court properly denied appellants' motion for JNOV.

## 2. New trial

■ A district court may grant a new trial for a variety of reasons, including:

(a) Irregularity in the proceedings of the [district] court, referee, jury, or prevailing party, or any order or abuse of discretion, whereby the moving party was deprived of a fair trial;

(b) Misconduct of the jury or prevailing party;

(c) Accident or surprise which could not have been prevented by ordinary prudence;

. . . .

(f) Errors of law occurring at the trial, and objected to at the time or, if no objection need have been made pursuant to Rules 46 and 51, plainly assigned in the notice of motion [for a new trial].

Minn. R. Civ. P. 59.01. Because the district court has the discretion to grant a

new trial, we will not disturb the decision absent a clear abuse of that discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990). An appellate court "will not set aside a jury verdict on an appeal from a district court's denial of a motion for a new trial unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Navarre v. S. Washington County Schs.*, 652 N.W.2d 9, 21 (Minn. 2002) (quotations omitted).

Appellants make several arguments as to why the district court abused its discretion by denying their motion for a new trial. They focus their argument on three areas: (1) the settlement agreements between HGA and third-party defendants; (2) prejudicial misconduct of the parties; and (3) errors of law at trial.

### a. *Settlement agreements*

Appellants argue that various aspects of the settlement agreements entitled them to a new trial because they were not true *Pierringer* releases, their cooperation clauses distorted the trial process, and the district court did not allow appellants to thoroughly cross-examine witnesses as to their knowledge of the settlements. We disagree.

■■■■ Generally, "[s]ettlement of disputes without litigation is highly favored, and such settlements will not be lightly set aside by the courts." *Johnson v. St. Paul Ins. Cos.*, 305 N.W.2d 571, 573 (Minn.1981) (citation omitted). A *Pierringer* release

> (1) releases the settling defendant from the lawsuit and discharges a part of the cause of action equal to the part attributable to the settling joint tortfeasor's causal negligence, (2) reserves "the balance of the whole cause of action" against the non-settling joint tortfeasors, and (3) contains an agreement whereby

the plaintiff indemnifies the settling defendant from any claims of contribution made by the non-settling parties and agrees to satisfy any judgment he obtains from the non-settling tortfeasors to the extent the settling tortfeasor has been released.

*Kellen v. Mathias*, 519 N.W.2d 218, 220 (Minn.App.1994) (quotations omitted).

■■■■ Before trial, HGA entered into settlement agreements with K/O, AET, and A & P/JW. In return for payment, HGA agreed to release its claims against the settling parties, hold them harmless, and indemnify them. And each settling party agreed to cooperate with HGA in the defense of the case and not to consult with any other party of the proceeding. The agreements also specified that they were *Pierringer* releases and that the settling party was released to the extent of HGA's sizable insurance policy. As a result of the agreements, the district court dismissed the settling parties with prejudice, stating that the dismissal did not preclude appellants from asserting claims against the dismissed parties.

Appellants contend that the agreements were not true *Pierringer* releases because they contained partial indemnity clauses rather than full indemnity clauses. But appellants fail to establish that this feature prejudiced them at trial. Furthermore, appellants ignore the fundamental distinction that the parties dismissed via the settlements were third-party defendants. The release of those third-party defendants did not affect appellants' posture, particularly since the district court explicitly noted that the dismissal did not preclude appellants from asserting claims against the dismissed parties.

Appellants also challenge the agreements' cooperation clauses, arguing that the clauses exceeded the boundaries of

proper settlement by creating rights and obligations between the settling parties and distorting the trial process. But settlements properly set rights and obligations of parties to them because "[s]ettlement agreements are contractual in nature and are as binding on the parties as any contract they could make." *Chalmers v. Kanawyer,* 544 N.W.2d 795, 797 (Minn.App.1996). Appellants claim that the settlements distorted the trial process because they caused settling parties to provide testimony favorable to the defense, which was inconsistent with the witness's previous statements. But if witnesses changed their stories, because of settlement or for any other reason, appellants could have challenged their testimony through impeachment, contradiction, or by demonstrating bias. *See* Minn. R. Evid. 613(b), 616. We reject appellants' claim that the settlement agreements rendered those tools of the adversarial process inadequate here.

Appellants next argue that the district court improperly limited the scope of cross-examination concerning the settlement agreements. The district court has discretion in determining the latitude to be allowed on cross-examination, and its ruling will not be reversed absent a clear abuse of discretion. *Frey v. Snelgrove,* 269 N.W.2d 918, 923 (Minn.1978). Although a release agreement is admissible under Minn. R. Evid. 408 when offered to prove bias or prejudice of a witness, the district court has discretion to determine whether to admit details of the agreement into evidence. *Id.*

The district court stated that appellants had every reasonable opportunity to cross-examine the released parties' representatives who testified. The court allowed appellants to ask witnesses if they were aware of the agreements. If aware, appellants could inquire as to the witness's knowledge of the indemnity or cooperation provisions. If the witness knew of those provisions, appellants were allowed to question the extent to which those terms affected the witness's testimony or caused bias. But if the questioning did not reveal that a witness was aware of the cooperation or indemnity provisions, then the court disallowed further questioning because bias provoked by either provision was a nonissue. The record indicates that appellants questioned a number of witnesses representing settling third-party defendants regarding their knowledge of the releases. And the court instructed the jury, both during and after the trial, that it may consider settlement evidence in assessing possible bias or credibility of a witness.

Appellants also complain that the court required them to refer to the settlement agreements as "partial" agreements. But they have not demonstrated how this prejudiced them at trial. Given the extensive amount of questioning the court allowed as to the effect of specific provisions of the agreements, we cannot conclude that the court abused its discretion by requiring the agreements be referred to as "partial."

The district court properly allowed appellants to cross-examine witnesses regarding their knowledge of the settlement agreements in order to show whether the agreement caused bias. Furthermore, the court provided reasoning to support limiting the scope of cross-examination to those witnesses with knowledge of the settlement agreement and its provisions. Therefore, we conclude that the district court did not abuse its discretion in regulating the extent to which appellants could cross-examine witnesses on the settlement agreements.

Appellants challenge both the substance and the effect of the settlement agreements. But they have failed to demon-

strate how those settlements so prejudiced their rights that they are entitled to a new trial, particularly when appellants were at all times able to assert claims against the released third-party defendants themselves, but elected not to do so. Viewing the evidence as a whole and in a light most favorable to the verdict, we conclude that the district court's denial of appellants' motion for a new trial based on challenges to the settlement agreements was not an abuse of discretion.

### b. *Misconduct*

Appellants argue that the district court abused its discretion by failing to grant their motion for a new trial based on the prejudicial misconduct of the parties. Listing numerous alleged wrongdoings, appellants assert that defense counsel at trial engaged in misconduct by citing matters outside the record, making testimonial assertions, and offering surprise testimony. We disagree.

■■■■ The decision to grant a new trial based on claimed attorney misconduct rests wholly within the district court's discretion. *Johnson v. Washington County,* 518 N.W.2d 594, 600 (Minn.1994). The district court judge is best positioned to determine whether an attorney's misconduct has tainted the jury's verdict. *Id.* at 601. The paramount consideration in determining whether a new trial is required in cases alleging misconduct is whether prejudice occurred. *Boland by Orr v. Morrill,* 270 Minn. 86, 100, 132 N.W.2d 711, 720 (1965). The prejudice must be such that it affected the outcome of the case. *Id.*

> An objection to improper remarks, a request for curative instruction, and a refusal by the trial court to take corrective action are generally prerequisites to the obtaining of a new trial on appeal except where the misconduct is so fla-

grant as to require the court to act on its own motion, or is so extreme that a corrective instruction would not alleviate the prejudice.

*Hake v. Soo Line Ry. Co.,* 258 N.W.2d 576, 582 (Minn.1977).

■■■ Appellants argue that R & C's closing argument incorporated matters outside of the record and was calculated to invoke the passion and prejudices of the jury. The record indicates that at closing argument, counsel for R & C described the demeanor of one of R & C's witnesses when she first entered the courtroom, outside of the jury's presence. In reviewing appellants' new-trial motion, the district court acknowledged that counsel's remark was improper, but that it "did not regard the incident as so out of bounds as to taint the fair trial process." We agree.

Appellants contend that R & C improperly classified an aspect of testimony as a "curveball." At trial, an A & P/JW employee described a letter he sent to his employer suggesting that Marcy not be entertained as a contractor on the project. The district court found that counsel had not known about the letter and that use of the "curveball" term "did not serve to so prejudice [appellants] as to infringe their right to a fair trial." Similarly, appellants challenge counsel's reference to a "soiree" in his closing argument. The district court dismissed appellants' objection to the term, explaining that defense counsel used the term in questioning witnesses and used it as a synonym for meeting.

■■■ Appellants allege other incidents of misconduct, including improper suggestions to the jury that they draw negative inferences from appellants' failure to call certain witnesses, an inappropriate reference to counsel's experience, reading verbatim from the trial transcript, and arguing that appellants' closing argument

should not be afforded the same weight as R & C's closing argument. But appellants waived these arguments when they failed to object to the statements at trial. *Id.*

Appellants also contend that they are entitled to a new trial based on the surprise testimony of two witnesses. A trial court has great discretion in granting a new trial on the basis of surprise under Minn. R. Civ. P. 59.01(c). *Sward v. Nash,* 230 Minn. 100, 109, 40 N.W.2d 828, 833 (1950). Such a motion should be granted only if there is a strong possibility that a new trial would have a different result. *Id.* An accident or surprise is an act that "could not have been prevented by ordinary prudence." Minn. R. Civ. P. 59.01(c).

Here, one of the witnesses who appellants allege offered surprise testimony was deposed three times, but the deposing attorneys never asked him whether he had communicated to his employer his opinion of Marcy's work. At trial he testified that he had a negative impression of Marcy's work. We conclude that the testimony did not constitute a surprise warranting a new trial under Minn. R. Civ. P. 59.01(c) because it could have been discovered with ordinary prudence if either party had just asked him the pertinent question during one of his depositions. The other witness that appellants allege offered surprise testimony was never deposed. Therefore, the contention that appellants were entitled to a new trial based on his surprise testimony lacks merit.

Appellants argue that the numerous instances of alleged misconduct cumulatively warrant a new trial. But the district court was in the best position to determine whether those instances tainted the jury's verdict. *See Johnson,* 518 N.W.2d at 601. And the district court rejected appellants' claims in a thoroughly detailed opinion that is supported by the record. Because

the claimed misconduct did not clearly result in prejudice to appellants, we conclude that the district court did not abuse its discretion in denying appellants' motion for a new trial based on the prevailing parties' alleged misconduct at trial.

c. *Errors of law*

Appellants also claim that they are entitled to a new trial based on errors of law at trial. They claim that the district court erred by: (1) including DRM on the special verdict form; (2) improperly admitting evidence; and (3) failing to instruct the jury on an engineering firm's indemnity liability. We disagree.

First, appellants argue that DRM should have been included as an absent party on the special verdict form. The district court has broad discretion in framing special verdict questions. *Dang v. St. Paul Ramsey Med. Ctr., Inc.,* 490 N.W.2d 653, 658 (Minn.App.1992) (citations omitted), *review denied* (Minn. Dec. 15, 1992).

At the outset of trial, R & C dismissed its claim against DRM because it lacked evidentiary support. After the close of trial, appellants moved to have DRM named as an absent party on the special verdict form. Appellants claim that respondents' argument that Marcy negligently ordered the wrong concrete mixture necessarily implicated DRM, the concrete supplier, as well. But the evidence indicates that DRM was not responsible for the delivery of the wrong mix; DRM merely delivered what Marcy ordered. Because the evidence did not support DRM's negligence, the district court did not abuse its discretion by declining to add DRM as a party to the special-verdict form.

Second, appellants assert that the district court abused its discretion by

making various evidentiary rulings. Absent an erroneous interpretation of the law, the question of whether to admit evidence is within the district court's discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn.1997). "Entitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error." *Id.* at 46 (quotation omitted).

■ Appellants argue that the district court improperly admitted testimony regarding the repair budget because that testimony lacked foundation. At trial, an R & C engineer testified, based on her training and experience, as to how contractors commonly approach a job that has a built-in repair budget. Because the testimony was based on the foundation of the witness's training and experience as an engineer, its admission was not an abuse of discretion.

■ Appellants claim that testimony regarding Marcy's work on other areas of the aquarium was irrelevant. The district court explained that appellants argued that inspectors failed to find defects in Marcy's work and implied that inspectors did not monitor work with sufficient care and diligence. Accordingly, "[e]vidence that earlier work on the project had been inspected and found wanting and that remedial action had been taken was relevant and material to the manner of the inspectors' work upon the project, their procedures and their diligence." Because evidence of Marcy's work outside its work on the tank was relevant and appellants do not assert that the court erroneously interpreted the law, the admission was proper.

■ Appellants also challenge the admission of a letter as inadmissible hearsay. Hearsay is a statement, other than one made by a person testifying, offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Hearsay is inadmissible unless an exception applies. Minn. R. Evid. 802. The letter at issue was addressed to AET from the manufacturer of Eclipse, a concrete additive, and stated that Eclipse was compatible with another chemical and was not toxic to aquatic organisms. The letter was relevant to determining whether AET knew the concrete mixture used in pouring the tank could have benefited from Eclipse. Accordingly, the letter was properly admissible to show that AET had notice of the Eclipse characteristics, and not to prove the truth of the matter asserted.

■ Appellants also argue that testimony describing conversations relating to the use of Eclipse was inadmissible hearsay. But appellants did not object to this testimony at trial. And when a party fails to object to evidence at trial, that party has generally waived any objection. *Steiner v. Beaudry Oil & Serv., Inc.*, 545 N.W.2d 39, 44 (Minn.App.1996), *review denied* (Minn. May 21, 1996); *see also* Minn. R. Evid. 103(a)(1) (requiring "a timely objection or motion to strike" to claim erroneous admission of evidence).

■ Appellants also argue that the district court erred by admitting computer animation showing the means and methods Marcy could have used to construct the Isle Royal Tank. To be admissible, "illustrative evidence must be substantially similar to the aspects being illustrated." *Behlke*, 474 N.W.2d at 358–59. Appellants contend that the animation was prejudicial because it showed a perfect result.

■ When the district court denied appellants' pretrial motion to exclude the animation, it admitted the animation for illustrative purposes only and did not allow it in the jury room for deliberations. Rejecting the challenge to the animation again as

a basis for appellants' motion for new trial, the district court explained that appellants claimed the tank was not constructable as designed while respondents claimed that the structure could have been erected using appropriate means and methods. Thus, the court stated that the animation's purpose was to illustrate the process that respondents claimed could have been employed to successfully build the structure. Appellants provide no evidence to suggest that the animation was inaccurate, was considered as substantive rather than illustrative evidence, or resulted in prejudice to them. Because the district court thoroughly examined the admissibility of the animation on two occasions and instructed the jury to consider the animation for illustrative purposes only, we cannot say that the district court abused its discretion by admitting the animation.

■■■ Third, appellants argue that the district court abused its discretion by declining to submit to the jury an instruction recognizing an engineering firm's liability for defective plans and specifications as required by the Minnesota Supreme Court in *Zontelli & Sons, Inc. v. City of Nashwauk*, 373 N.W.2d 744 (Minn.1985). District courts are allowed considerable latitude in selecting the language in jury instructions. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). Appellate courts will not reverse a district court's decision unless the instructions constituted an abuse of discretion. *Id.*

The district court declined to give the instruction patterned on *Zontelli* because it properly found that *Zontelli* was distinguishable from facts in this case. But even if the cases were factually similar, the *Zontelli* court did not hold, as appellants assert, that all engineering firms are necessarily liable in indemnity for defective plans and specifications. 373 N.W.2d at 755–56. Therefore, we conclude that the district court did not abuse its discretion by denying appellants' request to submit a jury instruction patterned on *Zontelli*.

## V.

Both appellants and HGA challenge parts of the district court's order taxing costs and disbursements. Appellants argue that the court abused its discretion by awarding unauthorized amounts of daily expert-witness fees and by awarding fees for expert-witness preparation. HGA argues that the district court improperly granted Authority's motion to stay enforcement of the judgment and that the district court should have awarded HGA its daily transcript costs.

■■■ The prevailing party in a district court action "shall" be allowed costs and reasonable disbursements. Minn.Stat. §§ 549.02 (2004), 549.04 (Supp.2005). "An award of costs and disbursements has generally been allowed within the sound discretion of the trial judge. As such, we review for an abuse of that discretion." *Kellar v. Von Holtum*, 605 N.W.2d 696, 703 (Minn.2000) (citations omitted).

We first address appellants' argument that the district court abused its discretion in awarding expert-witness fees. Under Minnesota law, "[t]he judge of any court of record, before whom any witness is summoned or sworn and examined as an expert in any profession or calling, may allow such fees or compensation as may be just and reasonable." Minn.Stat. § 357.25 (2004). And Minn. R. Gen. Pract. 127 states:

On affidavit showing that a fee equalling or exceeding $300.00 per day has been billed, the court administrator may tax $300.00 per day for an expert witness fee as a disbursement in a civil case, subject to increase or decrease by a judge. . . . No allowance shall be made

for preparation or in conducting of experiments outside the courtroom by an expert.

In its order evaluating respondents' application for costs and disbursements, the district court meticulously addressed respondents' claims regarding expert witnesses. Generally, the court found that it was necessary for respondents to use expert witnesses "[g]iven the complexity of this litigation and the nature of the factual matters in contest." And for each expert, the court analyzed the value the expert added to the proceedings and scrutinized the rate and the amount of work the expert expended on the case.

■ Appellants argue that the district court erred because Minn. R. Gen. P. 127 authorizes a maximum of only $300 per day for expert-witness fees and does not allow fees "for preparation . . . outside the courtroom by an expert." We disagree. Rule 127 specifies only the daily expert fees that the court administrator may tax. And contrary to appellants' assertion, the court may, in its discretion, allow "pretrial preparation [time] . . . in awarding just and reasonable compensation" under Minn. Stat. § 357.25. *Quade & Sons Refrigeration, Inc. v. Minn. Mining & Mfg. Co.*, 510 N.W.2d 256, 260–61 (Minn.App.1994), *review denied* (Minn. Mar. 15, 1994).

■ HGA argues that the district court abused its discretion by granting Authority's request to stay enforcement of the judgment for costs and disbursements against it pending appeal. It contends that Authority did not qualify as a "governmental subdivision" entitled to the benefit of Minn. R. Civ. P. 62.04. District courts have discretion whether to stay enforcement of proceedings pending appeal. *State v. N. Pac. Ry. Co.*, 221 Minn. 400, 409, 22 N.W.2d 569, 574 (1946).

■ HGA's argument turns on the mistaken assumption that the district court granted Authority's request to stay enforcement of the judgment pursuant to rule 62.04 because the court considered HGA a governmental subdivision. But the court explicitly found that Authority did not fall within the scope of that provision. The district court considered Authority's quasi-governmental characteristics and the sufficiency of its available security and determined that a bond was not necessary to secure the judgment against Authority pending appeal. We conclude that the district court's determination did not constitute an abuse of discretion.

■ HGA also argues that the district court erred by failing to award HGA the costs of its trial transcripts. The Minnesota Supreme Court has held that absent an agreement by the parties, costs for partial trial transcripts are not taxable and awardable as costs. *Striebel v. Minn. State High Sch. League*, 321 N.W.2d 400, 403 (Minn.1982); *Salo v. Duluth & Iron Range R.R. Co.*, 124 Minn. 361, 363–64, 145 N.W. 114, 115 (1914). It is undisputed that the parties here did not agree to allow trial transcripts as taxable costs. Therefore, the district court did not abuse its discretion in declining HGA's request to award the cost of the daily trial transcripts. HGA maintains that this court should reconsider *Salo* in light of the benefits of obtaining trial transcripts for use during trial. But this court has no authority to overrule decisions of the supreme court. *Mueller v. Theis*, 512 N.W.2d 907, 912 (Minn.App.1994), *review denied* (Minn. Apr. 28, 1994).

## DECISION

The district court may extend the time limits imposed by Minn.Stat. § 544.42 (2004) for service of expert-review affidavits, even after the time limits expire, upon

a showing of excusable neglect pursuant to Minn. R. Civ. P. 6.02.

The district court did not err by denying respondents' motion for summary judgment because fact issues existed as to whether respondents were estopped from asserting a statute-of-limitations defense. And because HGA failed to demonstrate how any potential error prejudiced the result of the trial, the district court did not commit reversible error by denying HGA's motion for directed verdict.

The district court did not abuse its discretion in denying appellants' motions to amend the findings, for judgment notwithstanding the verdict, or for a new trial. And the district court did not abuse its discretion in awarding expert-witness fees, in granting Authority's motion to stay enforcement of the judgment against it, or in denying respondent's motion for daily transcript costs.

**Affirmed.**